Is that different, counsel? Just my colleague reminds you normally we thank people when they take cases under the Criminal Justice Act. You're listed on my form as pro bono. Does that mean you're not even going to charge the government under the CJA? That's right. Well, we appreciate it even more then. Thank you. 143499, Cynthia Winn v. Comm of Social Security Oral argument not to exceed 15 minutes per side. Mr. Rake for the Plaintiff Appellate. Excuse me. Wait one second. Here we go. Just people moving around. Let's get a chance for everybody to get settled. Okay. You may proceed. Good morning, Your Honors. May it please the Court. My name is Michael Rake. I represent the appellant, Cynthia Winn, in this case. I'd like to please reserve three minutes for rebuttal. You may. Thank you. Your Honors, this is a Social Security case where the standard of review is whether the ALJ's opinion is supported by substantial evidence in a disability case and whether the ALJ followed the appropriate legal standard. We argue that the ALJ erred by finding no severe mental health impairment against the weight of the evidence. This is particularly important in this case because she was denied based upon her ability to do her past work as a receptionist. And then our second argument is that Dr. Wee, the claimant's treating psychiatrist's opinion, was not evaluated properly. Firstly, the claimant argues that this is not a typical case of a government doctor versus a treating doctor. This is a case of all the doctors versus the ALJ. Dr. Wee, the claimant's psychiatrist, Dr. Jones, the state agency consultative evaluator, and Dr. Haskins and Chambly, both reviewing doctors, have all indicated that the claimant was at least moderately impaired in her ability to deal with the public. The vocational expert at the hearing indicated that that limitation would eliminate the claimant's ability to do her past work. Do we know how many times your client saw Dr. Wee before? Is Dr. Wee a man or a woman? Dr. Wee is a man, I believe, and I do not know how many times the claimant saw Dr. Wee, but I do know that he began treating her in 2009 and issued his opinion in 2010. Wait a minute. You said that started in 2009. I thought there's a document in the interrogatories which said I've been treating since June 8th of 2010. Isn't that page 647? Yes, Your Honor. I meant that her psychological treatment began. Okay, by other people, not by Dr. Wee. I think Judge Siler's question was when you talk about whether somebody is a treating physician, we know that there was a previous psychiatrist who retired and then Dr. Wee began, and there seems to be some controversy, but either April 8th or June 8th. Is that not right? Yes, Your Honor. That's correct. Okay, and so then the question was, and the interrogatories are signed in August of 2010, I believe. So the question was, other than I found one treatment notes and I found the interrogatories, I found nothing else that indicated any other visits to Dr. Wee. Am I wrong on that? Are there other things in the record? I can't suggest that you're wrong on that. The way that oftentimes this works is a claimant will treat with a counselor and then a psychiatrist will oversee the medications. And that was Turner, because there were a lot of notes from this Turner counselor. And the previous psychiatrist, I tried to find if there were any treatment notes from that person, and I had some difficulty. I mean, there's a reference to the name of the previous psychiatrist, but are there treatment notes from the previous psychiatrist? No, Your Honor, the treatment notes aren't listed as being from an earlier counselor, and I assume that the counselor was the same throughout and Dr. Wee was the new psychiatrist, and there were not earlier treatment notes from the earlier psychiatrist. We know Dr. Wee only saw your client one time. Does that make her a treating physician or are you tied on to the previous psychiatrist? No, well, I don't know that Dr. Wee only saw her one time. If you say that's correct, I don't have anything here that I can argue with you on that. But I do believe that Dr. Wee as a supervisor is well aware of the treatment that a person has had. The ALJ also doesn't indicate that specifically that Dr. Wee is not a treating physician. In fact, the ALJ says that Dr. Wee was a treating physician. So that's a finding of fact by the ALJ? I believe it is, Your Honor, and I believe that it's a post hoc rationalization afterwards that potentially Dr. Wee was not a treating physician. The ALJ does suggest that it's possible that Dr. Wee wasn't, but the issue is not even, for example, if you found that Dr. Wee was not a treating physician and that Dr. Wee's opinion were only entitled to wait consistent with a consultative source and they didn't get the special consideration of the treating physician. The claimant still argues that that opinion is similar to the opinions of Dr. Haskins, Dr. Jones, and Dr. Chambly, all which note some degree of mental health limitation. Our issue here is that the ALJ found no mental health limitation whatsoever. Her question to the vocational expert is telling in this regard because she says an individual with no particular mental health limitations would be able to do past work. Is that correct? And the vocational expert answers yes. So the argument is that that is a situation where an ALJ is acting as making a determination that is against the weight of the evidence. And it's important that... Help me here about what happens. Is there a specific question that says if the mental limitation is moderate but not severe or if it's mild but not severe, then what result? Is that question asked specifically? Yes, Your Honor. The case is Maziar's, and this indicates that... Can I ask about what happened here? Oh, yes. In other words, earlier I understood you to say that it was specifically stated that if moderate limitation, then can't do work. But then you went on to seem to say that, no, the question was if severe, could she work? No. And I'm asking you the converse. Did they then go on to say, well, what about if it's only mild or only moderate? Yes, Your Honor. In the hearing, the questions to a vocational expert have to be put in vocational terms. And those questions are specifically to what portion of the workday an individual is able to perform a task. So a mildly impaired individual may be able to perform the task frequently. A moderately impaired individual may be able to perform the task occasionally. And a markedly impaired individual may not be able to perform the task at all. After the judge questioned the vocational expert, I cross-examined the vocational expert who indicated that the person who is moderately impaired, based upon my vocational expert question, would be unable to do the work. Do you have a page reference for that part of the transcript? If not, I can find it eventually. Just thought you might have it. I apologize, Your Honor. Go ahead. Counsel, the appellee's brief seems to suggest that Dr. Wee took over as the treating physician after the retirement of the petitioner's prior psychiatrist. And I can't tell from this how long he treated her, but from what's said in the brief, it would appear that at least two months of time of treatment, which I would believe would entail multiple visits, began in April or June of 2010. Does that sound right? Yes, Your Honor. I cannot point to specific treatment notes signed at the bottom by Dr. Wee, indicating without any question whatsoever that Dr. Wee was the evaluator on that particular day. But I do believe that Dr. Wee does constitute a treating source, and I do believe that that's what the ALJ appeared to ultimately come to the conclusion at the hearing. Having recited what needs to be reviewed when a source is a treating source, it appears that ALJ recognized that Dr. Wee was likely a treating source, otherwise that portion of her decision would not have recited that. If it's okay, Your Honors, I'd move on just briefly to point out that the government's brief appears to recognize that all of the medical sources, all of the psychological medical sources, believe that this person is at least moderately impaired. But their argument and the ALJ's argument seems to be that the condition got better, basically that she was cured at the point that she, a short time after she began treatment. We'd like to challenge the accuracy of that. During the period of time that the ALJ notes very slight issues of improvement, we'd also like to point out that there's treatment notes occurring at the same time, and this is page ID 804, 812, 641, 755, noting unpredictable depression, needing calming techniques, isolating herself, agitation, poor stress tolerance, anger issues, depression, not bathing for two weeks, mood swings, tearfulness, general problems. Are those from Turner's notes? Yes, Your Honor. So Turner has some pluses and some minuses. Is that fair? Yes, Your Honor. I think that's very fair, and I think that's the actual issue because there are some, it's very fair to say that there have been some improvements in her condition. We know that she attended a singles mixer, for example, and we know that she attends her church and she goes out more, and these are all things that her counselor is working towards her being able to do, but we think that it's quite a leap to go from there to the fact that she has no mental health restrictions whatsoever. She certainly remained in treatment, and she certainly still takes medication, and her doctors did not ever send her away for treatment. She didn't stop. It's also noteworthy that Dr. Wee's interrogatory happens after all of these supposed instances of improvement that have been pointed out by the judge. So ultimately, we argue that this is a situation that's maybe mentioned in Gahart where isolated bits of the medical record have been taken out of context rather than- Counsel, what, you sort of have- I'm sorry, I'm out of time. No, I'll let you answer this. Thank you, sir. I'm going to ask it. Two different claims or two different strings to your bow, assuming that we agreed with one or both of them, what result, that is, would you automatically get payment or would it be remanded for the application of correct principles? Your Honor, if it was determined that the judge erred by failing to consider a severe psychological impairment, a remand would likely be appropriate so that further questions could be given to a vocational expert. So you would go to a sort of full step five vocational expert hearing. Yes, Your Honor. Okay, thank you, Counsel. You'll have your time for rebuttal. Thank you, sir. Thank you. And we've granted your motion to argue from there. If you'll simply speak up loudly, we'll hear you. Thank you, Your Honor. May it please the Court. Good morning. I'm Gina Gebhardt and I represent the Commissioner, the appellee in this appeal. This Court should affirm the Commissioner's decision because substantial evidence supports the ALJ's determination that Ms. Wynn was not disabled. In order to be disabling, an impairment must be expected to result in death or last continuously for a period of at least 12 months. This is known as the duration requirement. The ALJ reasonably considered the totality of the evidence and determined that Ms. Wynn's mental impairments of depression and anxiety were not severe because they did not significantly impair her ability to perform basic work activities for the requisite 12-month period. And accordingly, the ALJ also reasonably found that Ms. Wynn's residual functional capacity, or RFC, did not include any mental limitation. In evaluating Let me stop you there just for one moment because at one reading saying that it didn't impair her at all seems a little odd from the record in terms of these back and forth, is the argument that in order to count, it has to be continuous for 12 months, and so if it's up and down and sometimes she's better, then it just doesn't meet the continuous 12-month standard. That's right, Your Honor. At Step 2, during the five-step sequential process for evaluating a disability claim, the ALJ looks to whether the claimant has any severe impairment. In this case, the ALJ found severe physical impairments but looked at the mental impairments, acknowledged that Ms. Wynn had diagnoses of both an anxiety disorder and depression, and actually acknowledged that those diagnoses continued. The ALJ found that there was a medically determinable impairment of depression and anxiety. However, after looking at all the evidence and talking about the longitudinal treatment record, she found that there was no severe mental impairment, meaning that there was no significant impairment in her ability to do basic work activities based on her mental impairments for at least 12 months. I'm not sure this standard is being correctly stated here. It's not that the ALJ has to show that the person was impaired for 12 months. The evidence can be that the person is expected to be impaired for 12 months, and that's based upon medical evidence, and that would satisfy the 12-month requirement. So if she's sufficiently impaired that it can be reasonably predicted that she's going to be impaired for 12 months, that would satisfy the standard. Is that right? That's right, Judge Clay. Your Honor, if, for example, the ALJ found that she had a severe mental impairment currently, but it had only lasted six months so far, and say the medical record indicated that it would continue, you know, there was no indication that it would stop, the ALJ might have found that there was an expectation that she would have a severe mental impairment that would last at least 12 months. In this case, it's a little different, though. What the ALJ found is that although Ms. Wynn may have had a severe mental impairment for some period of time prior to receiving mental health treatment that started in July of 2009, once she started receiving treatment, once she started receiving regular counseling by her therapist, Ms. Turner, and once she started receiving psychotropic medication in July 2009 from her psychiatrist, or I'm sorry, I think it was originally her primary care physician, that her symptoms improved greatly. I didn't quite read the record that way. It seemed that a large part of the ALJ's conclusion that she was getting better was based upon her ability to participate in social activities, but that rationale was somewhat overstated, it seemed to me, because her participation in the social activities was actually part of her prescribed course of treatment, and it also seemed that some of her attempt to participate was less than successful, so that whole justification seems a bit overstated, based upon the record as I see it. I understand, Your Honor. I believe you're talking about the references in the ALJ's decision to Ms. Turner, Ms. Wynn's therapist's records, which indicate that as her counseling treatment progressed, she was becoming more able to engage in social functions, that she was becoming more successful in going out and trying new activities, in being more part of the world. And some of that was unsuccessful, but isn't the issue whether her participation in social activities indicates, would be indicative of her ability to participate in sustained work activity. That's the basis for regarding the participation in social activities being important, and whether or not it supports the notion that that reflects an ability to better participate in her work activities themselves. Your Honor, the ALJ does not cite Ms. Wynn's abilities to engage in certain social functions, to equate those abilities to an ability to work on a full-time basis. What she does is she looks to the overall medical record, including Ms. Turner's therapy notes, which include a lot of these references to being able to engage in social activities, as evidence that Ms. Wynn's mental functioning capabilities are not as severe during this time period as she alleged, that they were, in fact, improving. Because Ms. Wynn's main allegations of her mental limitations revolve around symptoms of not being able to go out, not being able to engage in social interactions, being afraid of being out in public. And so the ALJ is looking at the totality of the evidence, including these comments written by Ms. Turner, which indicate that she's actually improving quite a bit. Counsel, what's the effect of the unemployment compensation status? As I read the record, she was drawing unemployment compensation, which required her to say that she was available for work. Is it up through April of 2010? That's correct, Your Honor. And are there regulations that make that either persuasive or dispositive as to her condition during that time? Not dispositive, Your Honor, but yes, persuasive, certainly. In order to earn workers' compensation benefits, a beneficiary has to attest that she's actively looking for work and capable of work. And so the ALJ here reasonably considered the fact that Ms. Wynn received unemployment benefits for two years, from March 2008 until April 2010. And in addition, Ms. Wynn testified in her administrative hearing with the ALJ that she was actively looking for work at this time. So as the ALJ noted, this fact indicates that Ms. Wynn herself believed that she was capable of working. So that would raise a question of did she get worse after April 2010 and what the evidence either way was on that? Your Honor, it could raise that question. However, the evidence indicates that Ms. Wynn's mental health symptoms were at their most severe prior to July 2009, so prior to when she began her mental health treatment. So, you know, I mean, if we're looking at it in terms of a timeline, if her symptoms began to improve after July of 2009 when we're seeing a lot of these improvements in the medical record and she believed she was capable of working during that time, she was actively looking for work, she was receiving workers' comp benefits, it doesn't make a lot of sense that she would argue later that then her symptoms worsened in April 2010 because there simply is no evidence in the record indicating that. Well, I read the record a little bit differently with reference to that April 2010 date because what happened in April 2010 was that that's when she went to Dr. Wee and so that's really when she obtained the diagnosis from Dr. Wee that she was not capable of working because at that time Dr. Wee concluded that it was not reasonably probable that she's been functioning at a high enough level to respond to supervision, coworkers, or work pressures and to meet the normal standards of work productivity and so on and so forth. So actually the workers' comp and the fact that that went to the 2010 date sort of all ties together and makes sense in terms of the progression of her diagnosis and treatment. Your Honor, Ms. Winn began receiving psychotropic medications in July 2009. I believe originally from her primary care physician. She eventually did go to a psychiatrist. As this Honorable Bench has discussed with Mr. Rake, some of those records are not in the transcript. They weren't submitted by the claimant to the agency at any time. We do have records beginning with psychiatrist Dr. Wee, which I believe began in June of 2010. We've got some page notes, some of which seem to be for the same visit and some of which say April and some of which say June and then Dr. Wee in the response to interrogatories says I've been treating since June. Do you have any way of resolving that conflict? That's right, Your Honor. I think it's a little unclear exactly when Dr. Wee began treating Ms. Winn and I think it is also a little unclear exactly how many times she saw Ms. Winn. However, in the record, which is what the ALJ has to look at, there's only an indication that she was treated once or twice. Now, this issue did come up when Mr. Rake was giving his argument. Your Honors asked about whether Dr. Wee was a treating physician or not. Did the ALJ say he was or she was? Yes, Your Honor. The ALJ considered the fact that Dr. Wee had not been treating Ms. Winn for very long. In fact, the ALJ specifically pointed out that Dr. Wee had only been the treating psychiatrist for a couple of months and maybe had only seen Ms. Winn once before she saw her to fill out the interrogatories. However, the ALJ gave Ms. Winn the benefit of the doubt and did treat Dr. Wee's opinion as a treating physician opinion. However, it is appropriate for an ALJ to consider the frequency and duration of the treating relationship in deciding how much weight to give that opinion, and the ALJ took that into account and stated in her decision that she was considering the frequency and duration of the relationship. Let me ask you this. Would it be a correct statement to say that every physician who saw the petitioner concluded that she was either moderately or severely impaired with major bouts of depression? I mean, there's no physician who really supports the ALJ's view of this and the way he takes things out of various, I don't want to say cherry-picked, but various entries from the treatment records to say that what was wrong with her really would not impair her ability to work. Your Honor, there are four medical opinions in the record from mental health doctors. In evaluating the opinions of the three state agency consulting psychologists, one who examined Ms. Winn and two who reviewed the evidence of record informing their opinions, the ALJ noted that each of those opinions was completed based on Ms. Winn's mental health status prior to receiving any regular mental health treatment, that is, prior to receiving counseling and medication, which began in July 2009. So when she analyzed those three medical opinions, the ALJ noted that there were findings of moderate impairments. However, she also acknowledged that those were completed all in a short period of time and without benefit of looking at the records after Ms. Winn started receiving them. So the three state doctors are all when, in 2009? They're 2009. So Dr. Jones examined Ms. Winn in March 2009. Dr. Hoskins, I believe, reviewed the record in late March 2009 and completed her opinion. And then Dr. Chambly actually reviewed the record in September 2009, but there's no indication that she had access to those mental health records that began just a couple months earlier. Okay. Thank you, Your Honors. I see that my time is up, so if there are no further questions, the Commissioner will wrap up. Anything else? Thank you, Counsel. You'll have your time for rebuttal, Mr. Rake. Thank you, sir. Your Honor, the first thing I would like to address is the longitudinal time frame. As you know, the ALJs are tasked with determining whether a disability existed for any 12 months. The claimant's alleged onset date in this case is March of 2008. And even if, as the appellee argues, the condition improved in 2009, late 2009, when she experienced treatment, then she should have been found disabled for a period of time when those problems were severe because there's no evidence at all that she wasn't severely impaired for those first 12 months of her case. So that would be, in your view, from March 2008 up until mid or late 2009? If you do agree that her condition has improved to such an extent that she has no problems whatsoever that would impact her ability to work. Well, it's not that she has no, as I understood it from Judge Clay's statement, which I thought was right, was that if it was mild, she could probably work. If it's moderate, I mean, I'm not the vocational expert, but that's the way I read it. Is that about right? Well, if it's mild, it may have no effect on her ability to do full-time work. And what's important here, Your Honor, is that this is a grid regulations case. This is an older person who, if she's limited to sedentary work, she wins as long as her past work is ruled out. And this woman worked as a receptionist. So even a very de minimis standard, this is a de minimis standard on whether her psychological problems were severe or not. She's not disabled based on her psychological problems alone in order to be entitled to benefits. She only has to be slightly impaired to such an extent that she's unable to do this job as a receptionist. You referred to this the first time words come up as a grid case. Yes, Your Honor. Is it that it's a grid case and she loses under the current grids, but if you can knock it off the grids by having additional limitations, then you would get to step five and a V.E. hearing? Is that sort of the? Yes, sir, Your Honor. I would argue that if the treating source opinion is granted weight, the claimant should win. And if she's found to have a severe impairment that in any way affects her ability to do her job as a receptionist, she ought to win her case. Mariana's stands for the fact that even non-severe impairments need to be considered in her RFC. And as I said before, this judge didn't consider any psychological impairments whatsoever at any time during this time frame, even conceded by the government that there was a period of time where she was significantly impaired. And then the final thing, Your Honors, is this is a situation where there are four medical doctors who have said that this person has some psychological diagnosis and impairment. When an ALJ who's untrained in that area says that it's completely cured, it affects her ability to work, not at all, that's against the weight of the evidence. And to the extent that when you spoke just a minute ago, you said, well, you know, the best 12 months might have been at the beginning, but that's the period when she's on unemployment and saying she's seeking work. Yes, Your Honor. Can I please address that? Could you address that for a moment? Yes, Your Honor. Are there cases either way? Unemployment compensation, an individual has to, in order to receive that, they have to say that they're seeking work. If an individual, for example, who's over 55 is seeking only sedentary jobs, that's not inconsistent with receiving that unemployment. Unemployment compensation, there's an inconsistency when a person, for example, says they can't do any job whatsoever and then also collects unemployment trying to go out and work. But they give a benefit to people who are older. And if the only jobs she was seeking were sedentary-type jobs, that's actually a testament to her credibility. Although here, the ALJ is only holding her to sedentary jobs, right? I mean, he agrees she can't do light or heavier work. Yes, Your Honor. But she finds that she can do this job as a receptionist with no mental health restrictions. Okay. Thank you, counsel. The case will be submitted. The clerk may call the next.